**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA** * **CRIMINAL ACTION NO. 25-268**

**VERSUS** * **SECTION: L**

**BRANDON BUTLER** *

**ORDER & REASONS**

Before the Court is a Motion to Dismiss Indictment filed by Defendant Brandon Butler. R. Doc. 46. The United States opposes the Motion. R. Doc. 53. After considering the record, briefing, and applicable law, the Court rules as follows:

## I. BACKGROUND & PENDING MOTION

This matter comes before the Court on a one-count indictment. R. Doc. 1. Count 1 charges the Defendant, Brandon Butler, with violating 18 U.S.C. § 922(g)(1) by possessing a firearm as a convicted felon. *Id*

Butler moves to dismiss the indictment against him on the ground that the statute under which he is indicted, § 922(g)(1), violates the constitutional separation of powers doctrine. R. Doc. 46. Butler's argument rests on two interrelated points. First, Butler cites the United States Supreme Court case *United States v. Reese*, 92 U.S. 214 (1875), for the proposition that a court cannot confine a partially unconstitutional statute to its valid applications without infringing on the separation of powers. *Id.* at 3–8. Applying *Reese*, Butler emphasizes that, following *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Fifth Circuit has held that § 922(g)(1) violates the Second Amendment for certain classes of felons whose predicate offenses lack historical analogues supporting disarmament. *Id.* at 4–5. Butler argues that this case-by-case invalidation of § 922(g)(1) violates the separation of powers principles as articulated in *Reese*, and following the logic of *Reese*, § 922(g)(1) must be struck down in its entirety. *Id.* at 3. Second, Butler maintains that the unconstitutional applications of § 922(g)(1) cannot be severed from the

statute because § 922(g)(1) is a single sentence, no words or sections can be excised, and no reasonable limiting construction can be given. *Id.* at 8. Butler concludes by raising Second Amendment, Commerce Clause, and void for vagueness challenges to § 922(g)(1), which he concedes are foreclosed by precedent. *Id.* at 9–14.

The Government opposes Butler's motion. R. Doc. 59. In the Government's view, Butler "mischaracteriz[es] the nature of judicial review." *Id.* at 1. *Reese* simply forbade the insertion of limiting language into a statute to create new statutory elements or narrow its scope. *Id.* at 1–2. Courts applying the Second Amendment to § 922(g)(1) engage in neither of these activities and are simply evaluating whether the statute can be constitutionally applied to the defendant at bar. *Id.* at 2. This practice of analyzing the constitutionality of a statute as applied to a particular case falls squarely within the judiciary's core Article III responsibilities. *Id.* On severability, the Government contends that the severability doctrine is inapplicable to the case at hand because the doctrine applies solely to unconstitutional statutory provisions, not unconstitutional applications. *Id.* at 3.

## II. LEGAL STANDARD

Fed. R. Crim. P. 12(b)(1) allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." "The propriety of granting a motion to dismiss an indictment . . . is by and large contingent upon whether the infirmity in the prosecution is essentially one of law or involves a determination of fact." *United States. v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005). "If a question of law is involved, then consideration of the motion is generally proper." *Id.* "If the Court finds that after resolving the questions of law, the defendant could not be found criminally liable; the court should grant the motion to dismiss." *United States v. Kohll's Pharmacy and Homecare Inc.*, No. 17-39, 2017 WL 2951580, at *1 (W.D. La. July, 6, 2017).

## III. DISCUSSION

The Supreme Court's seminal decision in *Bruen* rewrote the Second Amendment framework and prompted a series of challenges to § 922(g)(1). Under *Bruen*, "when a firearm regulation is challenged under the Second Amendment, the Government must show that the restriction is consistent with the Nation's historical tradition of firearm regulation." *United States v. Rahimi*, 602 U.S. 680, 689 (2024). The Fifth Circuit now follows an "as-applied" approach to Second Amendment challenges to § 922(g)(1): whether the statute can be enforced against a particular felon depends on the existence of a historical analogue supporting disarmament for the felon's predicate offense. *United States v. Hembree*, 165 F.4th 909, 911 (5th Cir.2026), *cert. denied*, 25-1219, 2026 WL 2976154 (U.S. Oct. 5, 2026) (explaining the Fifth Circuit's approach to § 922(g)(1) challenges since *Bruen*). The Circuit has sustained the law in many of its applications,[1] but occasionally found it unconstitutional where a historical analogue was absent.[2]

Butler maintains that the Circuit's as-applied approach to § 922(g)(1) violates the constitutional separation of powers doctrine. Butler's position rests principally on the 1875 Supreme Court decision *Reese*. That reliance is misplaced because *Reese* has been overtaken by later developments in the law. The Court will now discuss this development. The Court begins by detailing *Reese* and explaining how the decision has fallen out of step with modern law. Then, applying the severability doctrine, the Court concludes that § 922(g)(1)'s unconstitutional applications are severable from the statute. At bottom, it is the Court's position that the current

---

1 *See, e.g.*, *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), *cert. denied*, 145 S.Ct. 2822 (2025); *United States v. Allred*, 182 F.4th 448 (5th Cir. 2026); *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025); *United States v. Clark*, 148 F.4th 785 (5th Cir. 2025); *United States v. Morgan*, 147 F.4th 522 (5th Cir. 2025), *cert. denied*, 146 S.Ct. 1781 (2026); *United States v. LeBlanc*, No. 24-30036, 2025 WL 2218881, at *1 (5th Cir. Aug. 5, 2025), *cert. denied*, 146 S.Ct. 1843 (2026) (per curium).

2 *See, e.g.*, *Hembree*, 165 F.4th; *United States v. Allred*, 182 F.4th 448 (5th Cir. 2026); *United States v. Doucet*, 24-30656, 2025 WL 3515404 (5th Cir. Dec. 8, 2025) (per curium), *cert. denied*, 146 S.Ct. 2600 (2026); *United States v. Mitchell*, 160 F.4th 169 (5th Cir. 2025), *cert. denied*, 146 S.Ct. 2800 (2026).

judicial treatment of § 922(g)(1) does not violate the separation of powers doctrine and that the statute can be constitutionally applied to Butler.

A. ***Reese* and the Development of Application Severance**

In *Reese*, two election inspectors were indicted under a federal statute criminalizing wrongful interference with the right to vote after they refused to accept the election ballot of a Black man. 92 U.S. at 215. The Circuit Court upheld the defendants' demurrers to the indictment, and the Supreme Court affirmed. *Id.* at 215, 221–22. The Supreme Court first concluded that the criminal statute under which the defendants were indicted exceeded Congressional authority conferred by the Fifteenth Amendment because the statute prohibited voting interference generally instead of restricting it to conduct related specifically to race, color, or previous servitude. *Id.* at 220. The Court then considered whether the statute could still be enforced against the defendants considering their race-related voter discrimination fell within Congress' authority to prohibit. *Id.* at 221. The Court held that it could not, reasoning that such a result could "not [] be attained by striking out or disregarding words . . . in the [statute]," but only by "introduc[ing] words of limitation" to narrow its scope. *Id.* at 221–22. As the Court cautioned, "to limit this statute" to only race-related conduct "would be to make a new law, not to enforce an old one" and "[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *Id.* at 221.[3] This would, in effect, "substitute the judicial for the legislative department of the government." *Id.*

Butler emphasizes that like the statute in *Reese*, § 922(g)(1) sweeps wide, capturing felons whose firearm rights are both within and outside of congressional authority to prohibit

[3] *Reese's* reasoning invokes, in part, concerns about unconstitutional vagueness. The Fifth Circuit has already determined that § 922(g)(1) is not unconstitutionally vague, *United States v. Landrum*, 168 F.4th 771 (5th Cir. 2026), so the Court need not address that issue here.

consistent with the Second Amendment. R. Doc. 59 at 4. To continue to apply § 922(g)(1), courts must effectively "introduce words of limitation" into the statute to narrow its application to felons whose predicate offense have a historical analogue supporting disarmament.[4] *Id.* at 7. Under the principles distilled by *Reese*, this judicial rewriting of § 922(g)(1) amounts to the unlawful encroachment on the legislative branch's authority in violation of the separation of powers. *Id.*

Although the Supreme Court has never explicitly repudiated *Reese's* reasoning,[5] the law governing the separation of powers principles Butler invokes has developed considerably since the case was decided. In the decades following *Reese*, the Supreme Court remained faithful to its decision. In *In Re Trade-mark Cases*, the Court refused to narrow the meaning of the Trademark Act of 1870 to only activities affecting interstate commerce, 100 U.S. 82, 98–99 (1879), while in

---

4 The Court is mindful that a difference between *Reese* and the present case is that *Reese* considered whether to narrow the scope of the conduct criminalized, not the class of individuals covered by the statute. The Government seems to invoke this distinction when it argues that *Reese* does not apply in the § 922(g)(1) context because courts are not revising statutory elements. R. Doc. 59 at 1–2. The Court is not persuaded by this characterization. A prior felony is a statutory element of § 922(g)(1), *see United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005), and it could be fairly said that courts modify this element when they apply the law to only those felons whose offense has a historical analogue. Beyond that, if there is any meaningful difference between *Reese* and the present case, the Government has not made it known to the Court.

5 The Government in its memorandum claimed that the Supreme Court overruled *Reese* in the 1960 opinion *United States v. Raines*, 362 U.S. 17. R. Doc. 59 at 1. The Government offered no commentary on *Raines*, despite the Court ordering the parties to brief the case in supplemental memorandum. R. Docs. 59, 66. Like *Reese*, *Raines* concerned a federal statute that extended to private conduct beyond the scope permissible under the Fifteenth Amendment. 362 U.S. at 19–20. The statute at issue in *Raines* was a provision of the 1957 Civil Rights Act authorizing federal injunctions against anyone who engaged in race-based voting interference. *Id.* The conduct alleged was discrimination by state officials in the course of their duties, which Congress could indisputably prohibit under the Fifteenth Amendment. *Id.* Relying on *Reese*, the district court dismissed the complaint on the ground that the statute went beyond the scope permissible under the Fifteenth Amendment, and to "limit the statute" "by judicial construction" would exceed the powers assigned to the judiciary. *United States v. Raines*, 172 F. Supp. 552, 557 (M.D. Ga. 1959), *rev'd*, 362 U.S. 17 (1960). The Supreme Court reversed. In doing so, the Court did not reach the issue of whether it could narrow the statute's scope to bring it within constitutional bounds. The Court held instead that the defendants were not the proper litigants to challenge the statute because their conduct was within congressional authority to prohibit.

Significant commentary has been made on *Raines*, with the general consensus being that the Court's decision represented an early articulation of the limits to facial challenges and third-party standing. *See generally* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1329–31 (2000); Gillian E. Metzger, *Facial Challenges and Federalism,* 105 COLUM. L. REV. 873 (2005); *see also Craig v. Boren*, 429 U.S. 190, 195 n.4 (1976); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501–01 (1985); *Sec'y of State of Md. v. Joseph H. Munson Co*., 467 U.S. 947, 955 (1984). Because the Government has elected not to advance an argument with respect to these prudential concerns, the Court need not address them. The Court assumes that Butler may pursue a challenge against § 922(g)(1) on separation of power and inseverability grounds despite the fact that the statute does not violate the Second Amendment as applied to him.

*Hill v. Wallace*, the Court reasoned that although it could "sever" unconstitutional language from a statute, narrowing the statute's application through words of limitation was "legislative work beyond the power and function of the court." 259 U.S. 44, 42 (1922).

Over time, however, the Supreme Court began to adopt a form of application severance, preserving statues by limiting them to their constitutional applications. Application severance falls under the severability doctrine, which, during *Reese's* time was regarded as only applying when a statutory provision was invalidated. *See Reese*, 92 U.S. at 221; *Hill*, 259 U.S. at 42. The doctrine, as it is understood now, allows a court to isolate and invalidate the unconstitutional provisions *or* applications of a statute while preserving the enforceability of everything that remains. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006). In the 1973 case *Sloan v. Lemon*, the Supreme Court applied the severability doctrine in the application context to determine whether a state law providing tuition reimbursement for students attending private sectarian and nonsectarian schools could be severed to apply to only nonsectarian schools. 413 U.S. 825, 834 (1973). In *Brockett v. Spokane Arcades, Inc*., the Court relied on the doctrine to conclude that the unconstitutional applications of a law creating civil and criminal penalties for the exhibition of lewd films could be severed so the statute could continue to be enforced. 472 U.S. 491, 493, 506 (1985). And in countless other decisions the Supreme Court has, while not directly invoking the severability doctrine, upheld laws with unconstitutional applications. *Skilling v. United States*, 561 U.S. 358, 409 n.43 (2010) ("[C]ases 'paring down' federal statutes to avoid constitutional shoals are legion."); *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 485 (1995) (O'Connor, J., concurring) ("[T]his Court has on several occasions declared a statute invalid as to a particular application without striking the entire provision that appears to encompass it."); *see, e.g.*, *United States v. Grace*, 461 U.S. 171, 183–84 (1983) (holding that a law imposing criminal penalties on those who "parade, stand, or move in processions or assemblages in the Supreme Court Building

or grounds" was unconstitutional only as applied to activities on sidewalks surrounding the Supreme Court); *Tennessee v. Garner*, 471 U.S. 1 (1985) (invalidating a law permitting law enforcement to use "all the necessary means to effect the arrest" of a fleeing suspect to the extent it authorized the use of deadly force against unarmed, nondangerous persons); *Cantwell v. Connecticut*, 310 U.S. 296 (1940) (invalidating a "breach of peace" law insofar as it prohibited the peaceful distribution of religious literature); *NAACP v. Button*, 371 U.S. 415 (1963) (striking down a prohibition on solicitation by attorneys insofar as applied to the activities of the NAACP involved in the case). In each of these cases, the Court metaphorically inserted words of limitation to exclude unconstitutional applications.

The separation of powers concerns raised by *Reese* are now addressed through the severability doctrine's balanced approach. Instead of invalidating a statute due to a single constitutional defect, the doctrine instructs courts to "not nullify more of a legislature's work than is necessary." *Ayotte*, 546 U.S. at 329. The touchstone of severability is legislative intent: an unconstitutional application or provision is severed unless it is evident that Congress would not have enacted the law without it or the law is no longer fully operative. *Id.* at 330. Through these principles, the doctrine "manifests the Judiciary's respect for Congress' legislative role by keeping courts from unnecessarily disturbing a law," and prevents constitutional litigation from becoming "a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 626–27 (2020).

Today, "when confronting a constitutional flaw in a statute," the preferred remedy is to "limit the solution to the problem," and "enjoin only the unconstitutional applications of a statute while leaving other applications in force." *Ayotte*, 546 U.S. at 328–29. *Reese's* bar on the insertion of limiting language to narrow a statute to its constitutional scope does not reflect the present state

of the law, and the separation of powers concerns *Reese* raised are now addressed through severability. The Circuit's prior decisions finding § 922(g)(1) unconstitutional in certain contexts therefore do not demand the invalidation of the entire law. The question instead is whether § 922(g)(1)'s unconstitutional applications can be severed from the statute.

**B. § 922(g)(1)'s Unconstitutional Applications are Severable**

Severability is governed by two considerations: (1) whether Congress would have preferred the statute to live on in its partial form and (2) whether the statute remains fully operative as a law. *Barr*, 591 U.S. at 628; *Ayotte*, 546 U.S. at 330. Statutes are presumed severable, as it is "fairly unusual for the remainder of a law not to be operative." *Barr*, 591 U.S. at 628, 630. Some statutes contain severability clauses that instruct courts to preserve the remainder of a statute if a provision or application is found unenforceable. *Id.* at 624. "When Congress includes an express severability or nonseverability clause in the relevant statute, the judicial inquiry is straightforward." *Id*. "At least absent extraordinary circumstances, the Court should adhere to the text of the severability or nonseverability clause." *Id.*

Butler emphasizes two points related to severability. First, when Congress passed § 922(g)(1) in 1968, the prevailing view was that the Second Amendment did not protect an individual's right to keep and bear arms and there "was no [constitutional] obstacle" to § 922(g)(1). R. Doc. 59 at 5. § 922(g)(1), as applied today, is far from what Congress envisioned. *Id.* at 5–6. Second, Butler argues that § 922(g)(1) cannot be severed because it is a single sentence and there are no words or sections that can be excised. *Id.* at 8.

The Court takes a different position. First and foremost, § 922(g)(1) has a severability clause. The clause is housed in 18 U.S.C. § 928 and reads, "[i]f any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons not similarly situated or to other

circumstances shall not be affected thereby."[6] This language unambiguously indicates Congress' intent to preserve § 922(g)(1) should any application be found unenforceable. *See Koog v. United States*, 79 F.3d 452, 463 (5th Cir. 1996) (noting the language of 18 U.S.C. § 928 clearly indicates Congress' preference for severing a statute). While the Second Amendment landscape has certainly changed since § 922(g)(1) was enacted, and the Circuit has on several occasions invalidated the law in ways the 1968 Congress might not have anticipated,[7] the Court is unaware of any extraordinary circumstances which would warrant departing from the severability clause's clear instruction. Second, § 922(g)(1) remains fully operative as a law, as it continues to be applied in a vast number of circumstances.[8] Finally, there is no authority the Court is aware of supporting Butler's position that § 922(g)(1) is inseverable because it is a single sentence, and case law clearly indicates that severability does not depend on the identification of statutory language that may be stricken. *See, e.g.*, *Brockett*, 472 U.S. at 506; *Sloan*, 413 U.S. at 834. These considerations convince the Court that § 922(g)(1) is severable and can be applied constitutionally against Butler.[9]

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment is **DENIED,** R. Doc. 46.

United States District Judge

---

6 "[A]ny provision of this chapter" refers to Chapter 44 of Title 18 of the United States Code, in which § 922(g)(1) is located.

7 *See, e.g.*, *Hembree*, 165 F.4th (§ 922(g)(1) violates the Second Amendment when the only predicate offense is simple possession of methamphetamine); *Allred*, 182 F.4th (failure to pay child support); *Doucet*, 2025 WL 3515404 (attempted marijuana cultivation); *Mitchell*, 160 F.4th (habitual marijuana user).

8 *See, e.g.*, *Diaz*, 116 F.4th (§ 922(g)(1) does not violate the Second Amendment as applied to the defendant); *Allred*, 182 F.4th (same); *Kimble*, 142 F.4th (same); *Clark*, 148 F.4th (same); *Morgan*, 147 F.4th 522 (5th Cir. 2025), *cert. denied*, 146 S.Ct. 1781 (2026) (same); *LeBlanc*, 2025 WL 2218881 (same).

9 The Court need not address Butler's Commerce Clause, Second Amendment, and vagueness challenges. As Butler concedes, these arguments are foreclosed by precedent. R. Doc. 46 at 9–14.